USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1853 JUAN ANTONIO GARCIA, ETC., Plaintiff, Appellee, v. ISLAND PROGRAM DESIGNER, INC., Defendant, Appellee. v. UNITED STATES OF AMERICA, Intervenor, Appellant. __________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO _______________ No. 92-1889 IN RE: UNITED STATES OF AMERICA, Petitioner. ___________ ON PETITION FOR WRIT OF MANDAMUS _____________________ [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Cyr, Circuit Judges. ______________ ____________________ Steven W. Parks, Attorney, Tax Division, Department of Justice, ________________ with whom James A. Bruton, Acting Assistant Attorney General, Gary R. _______________ _______ Allen and Bruce R. Ellisen, Attorneys, Tax Division, Department of _____ _________________ Justice, were on brief for United States of America. Carlos J. Morales-Bauza with whom Jesus R. Rabell-Mendez and ________________________ _______________________ Rossello-Rentas & Rabell-Mendez were on brief for Juan Antonio Garcia, _______________________________ in his capacity as Insurance Commissioner of Puerto Rico. ____________________ September 14, 1993 ____________________ BREYER, Chief Judge. This appeal requires us to ___________ resolve a conflict between 1) a federal statute that gives federal tax claims first priority to a bankrupt company's assets, 31 U.S.C. 3713, and 2) a Puerto Rico "insurance company liquidation" statute with filing deadlines that can force those federal claims to the end of the priority queue. P.R. Laws Ann., tit. 26, 4019(2). A special federal statute, governing federal pre-emption of state insurance laws, 15 U.S.C. 1012(b), would require us to resolve the conflict in favor of Puerto Rico's law -- if that special federal statute applies. But, a recent Supreme Court case, interpreting that special law, indicates that it does not apply. Department of Treasury v. Fabe, 113 S. Ct. 2202 _______________________ ____ (1993). Hence, given ordinary pre-emption principles, the federal statute governs. We reverse a district court determination to the contrary. I Background __________ Puerto Rico's law permits the Commonwealth's Insurance Commissioner to act as trustee for an insolvent insurance company, to liquidate its assets, and to set a deadline for the filing of "proofs of claim" to those assets. P.R. Laws Ann., tit. 26, 4002, 4019. In -2- 2 February 1987, the Insurance Commissioner began proceedings, in a Commonwealth court, to liquidate the assets of Island Program Designer, Inc. ("IPD"), a health maintenance organization. The Insurance Commissioner set May 19, 1988, as the filing deadline for "proofs of claim." On June 1, 1989, about one year after the filing deadline, the federal Internal Revenue Service filed with the Insurance Commissioner a formal "proof" of its claim against IPD for $53,000 (representing federal tax liens that the IRS, between 1982 and 1985, had asserted, and perfected, on IPD's assets). In May 1991, the IRS intervened in the Commonwealth court liquidation proceedings. 26 U.S.C. 7424. It asked for the $53,000, as to which a federal law gave it first priority. 31 U.S.C. 3713. It also now tells us that, without a first priority, it will be unable to collect any of the money owed. The Insurance Commissioner opposed the IRS claim on the ground that the IRS had missed the (May 19, 1988) deadline for filing formal proofs of claim. He pointed out that Puerto Rico's insurance company liquidation statute says that claims for which proofs are filed after the _____ deadline shall not be paid until all timely-filed claims _____ ___ __ ____ have been "paid in full with interest." P.R. Laws Ann., -3- 3 tit. 26, 4019(2). And, in his view, Puerto Rico's priority system trumps the federal statute. At this point, the IRS removed the case to federal court. 28 U.S.C. 1441(b), 1444. The Insurance Commissioner asked the district court to "abstain" from deciding the legal issues, and to remand the case to the Commonwealth court. The district court then wrote an opinion deciding the basic question and holding that Puerto Rico's priority law, not the federal priority statute, governs. It also remanded the case to the Commonwealth court. The IRS now asks us to review, and to reverse, the remand order. II Appeal or Mandamus? ___________________ We are not completely certain why the district court, having decided the major legal issue in the case, decided to remand it. It may have done so as an administrative matter, to permit the Commonwealth court to enter a final judgment; or because it believed the controversy involved other legal issues that it should "abstain" from deciding; or simply because "remand" was the form of relief that the Insurance Commissioner had -4- 4 requested. Whatever the reason, the fact of remand raises a technical question about the form of review: Can the IRS simply appeal the remand order or must it seek a writ of mandamus? The problem arises out of a Supreme Court case, Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336 __________________________ _____________ (1976), in which the Court considered the scope of a statute, 28 U.S.C. 1447(d), that appeared to bar appellate review of all remand orders. The Court held that the statute's "review bar" applies only to a statutorily- limited, previously-mentioned set of remand orders, namely, those in which remand rests upon a defect in the removal proceeding. See 28 U.S.C. 1447(c). The Court, referring ___ to an 1875 case, Railroad Co. v. Wiswall, 90 U.S. (23 Wall.) ____________ _______ 507 (1875), also held that other remand orders, while reviewable, were not "final" orders and therefore were reviewable only through mandamus. Id. at 508. The remand __ order in this case falls outside the scope of the statutory "review bar." But, it would seem to fall within the scope of the Supreme Court's holding that review must take place through mandamus, not appeal. The IRS points out that several appeals courts have created an exception to Thermtron for (and permitted _________ -5- 5 appeal of) reviewable remand orders that amount to "collateral orders." See, e.g., McDermott Int'l Inc. v. ___ ____ _____________________ Lloyds Underwriters of London, 944 F.2d 1199, 1204 (5th Cir. _____________________________ 1991) (permitting appeal of remand order based on separable issue presented by a contract's "forum selection" clause), cert. denied, 113 S. Ct. 2442 (1993); Foster v. Chesapeake _____________ ______ __________ Ins. Co., Ltd., 933 F.2d 1207, 1211 & n.6 (3d Cir.) (same), ______________ cert. denied, 112 S. Ct. 302 (1991); Karl Koch Erecting Co. ____________ ______________________ v. New York Convention Ctr. Dev. Corp., 838 F.2d 656, 658-59 ___________________________________ & n.1 (2d Cir. 1988) (same); Pelleport Investors, Inc. v. __________________________ Budco Quality Theatres, Inc., 741 F.2d 273, 277-78 (9th Cir. ____________________________ 1984) (same). It adds that we should recognize an exception permitting appeal here. We are aware of arguments advanced for modifying, or finding exceptions to, Thermtron. Commentators have _________ argued that the Supreme Court should have departed from its earlier, nineteenth-century practice and found remand orders "final" (hence, in principle, appealable) because 1) they finally dispose of the federal proceedings; and, 2) there is _______ little practical reason not to permit appeal of those remand orders that fall outside section 1447(d)'s statutory bar. 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 3914.11, at 702-18 (2d ed. ______________________________ -6- 6 1991). Critics have also pointed to anomalies. Suppose, for example, that a federal district court, wishing to abstain pending resolution of state proceedings, embodies its decision in a stay of federal proceedings. The stay is appealable. Moses H. Cone Memorial Hosp. v. Mercury Constr. ____________________________ _______________ Corp., 460 U.S. 1, 8-10 (1983). Suppose that same court _____ embodies its decision in a remand (and, say, the plaintiff reserves the right to return to federal court, see England ___ _______ v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411 __________________________________________ (1964)). The parties would have no appeal as of right, but would have to seek "discretionary" review through mandamus. Cf. Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25 (1943) __ _____ _____________________ (mandamus is discretionary). The result is anomalous. Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31, 34-35 (2d ________ _____________________ Cir. 1988). And, one can find other examples of practical review difficulties, particularly when, say, a district court couples dismissal of a removed federal claim with remand of pendent state claims. 15A Wright, Miller & Cooper, supra, 3914.11, at 710-18; see also In re Amoco Petroleum _____ ________ _____________________ Additives Co., 964 F.2d 706 (7th Cir. 1992). _____________ Despite these difficulties, we do not believe we can find an exception that fits the present case. For one thing, the Supreme Court's language is rather absolute. It -7- 7 says clearly that a remand order is not "final." The Court rests its decision upon older cases that reflect the apparently then-common practice of appellate courts using mandamus, rather than appeal, to review the lawfulness of a lower court's refusal to assert jurisdiction (of which a remand is one variety). Wiswall, 90 U.S. (23 Wall.) at 508. _______ The Court, more recently, has approved circuit court use of mandamus as a vehicle for review. Carnegie-Mellon Univ. v. _____________________ Cohill, 484 U.S. 343, 355-56 (1988). And, lower courts, ______ even when faced with anomalies, have concluded that the Supreme Court meant what it said. In re Amoco Petroleum ______________________ Additives Co., 964 F.2d at 713; Corcoran, 842 F.2d at 34-35. _____________ ________ For another thing, we do not believe it possible to apply a "collateral order" exception here. See cases ___ cited at pp. 5-6, supra. The "collateral order" doctrine _____ permits parties to appeal (as "final decisions," 28 U.S.C. 1291) orders that "determine" a "disputed" and "important" issue "separate from the merits of the action," which are "effectively unreviewable" on a later appeal. Coopers & __________ Lybrand v. Livesay, 437 U.S. 463, 468 (1978). The record _______ _______ here does not set forth the relation of the remand to any remaining issues in sufficient detail for us to say with confidence that the remand order rests on the determination -8- 8 of an issue "separate from the merits of the action." But, more importantly, Thermtron and Wiswall themselves seem to _________ _______ involve "collateral orders." In Thermtron, the Court _________ reviewed (through mandamus) a district court order (erroneously) remanding the case to a state court on the ground that the state court would handle the case more expeditiously. That remand decision determined an important, separate, disputed issue that could not easily have been reviewed later through appeal. Similarly, in Wiswall, the Court reviewed (through mandamus, prior to the _______ enactment of 1447(d)) a lower court's important, separate, disputed decision to remand the case to state court for jurisdictional reasons. The upshot is that we cannot find a "collateral order" exception large enough to fit our case that does not also swallow up (and thereby simply disregard) the general rule. Finally, and perhaps most importantly, we need not further complicate the law with additional exceptions because the case before us meets Thermtron's criteria for _________ the issuance of mandamus. This case, like Thermtron, _________ involves the "traditional use of the writ [of mandamus] in aid of appellate jurisdiction to compel" a lower court "to exercise" its jurisdictional "authority when it is its duty -9- 9 to do so." Roche, 319 U.S. at 26, quoted in Thermtron, 423 _____ _________ _________ U.S. at 352. Mandamus here, like mandamus in Thermtron, is _________ not a substitute for appeal, cf. Roche, 319 U.S. at 26-31; __ _____ Will v. United States, 389 U.S. 90, 97 (1967); Schlagenhauf ____ _____________ ____________ v. Holder, 379 U.S. 104, 110 (1964), for Thermtron itself ______ _________ blocks immediate appeal; and eventual appeal through the Commonwealth court system does not promise the IRS meaningful review of the federal district court's critical legal determination. Of course, even where a court of appeals has the "power" to issue mandamus, that relief is "discretionary." 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, Federal Practice and Procedure 3933, at _______________________________ 213 (1977). Appellate courts typically exercise this discretion only in somewhat unusual instances, In re _______ Pearson, 990 F.2d 653, 656 (1st Cir. 1993), and where the _______ petitioner's rights are "clear and indisputable." Bankers _______ Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953); In re _______________ _______ _____ Pearson, 990 F.2d at 656. Nonetheless, in our view, the _______ IRS's right to relief here, after the Supreme Court's decision in Fabe, supra, is reasonably clear; its need for ____ _____ relief is fairly urgent; and, the fact that the remand falls outside 1447(d)'s review bar itself helps to make the -10- 10 remand unusual. Taken together, these circumstances justify exercising our "discretion" in favor of issuing the writ. -11- 11 III Pre-emption ___________ The IRS argues that the federal court was wrong not to retain the case and order payment of the $53,000 because federal law governs the case and requires that payment. The federal law in question is a statute, 31 U.S.C. 3713, which says: A claim of the United States Government shall be paid first when . . . a person indebted to the Government is insolvent and . . . an act of bankruptcy is committed. The Insurance Commissioner agrees that this statute would entitle the United States to priority (and, apparently to payment) were it not for a Commonwealth statute that governs insurance company liquidations. That statute, as we have said, instructs the Insurance Commissioner to set a deadline for presenting proofs of claims, and it adds: Proofs of claim may be filed subsequent to the date specified, but no such claim _____________ shall share in the distribution of the ________________________________________ assets until all allowed claims, proofs ________________________________________ of which have been filed before said ________________________________________ date, have been paid in full with ________________________________________ interest. ________ P.R. Laws Ann., tit. 26, 4019(2) (emphasis added). -12- 12 These two statutes conflict. We cannot reconcile the federal statute with the Commonwealth statute (say, by reading it as limited to instances of compliance with state procedures), for the courts have consistently interpreted the federal statute as overriding state procedural requirements of the sort here at issue (at least where a trustee has appropriate notice of federal claims). See, ___ e.g., Brown v. Coleman, 566 A.2d 1091 (Md. 1989) (federal ____ _____ _______ priority cannot be superseded or impaired by state law); ___________ United States v. Boots, 675 F. Supp. 550 (E.D. Mo. 1987) _____________ _____ (estate representative with actual, but not formal, notice of federal government's claim must pay that claim first); United States v. Snyder, 207 F. Supp. 189 (E.D. Pa. 1962) _____________ ______ (under predecessor statute, United States could file claim long after distribution of estate in probate court); United ______ States v. Backus, 24 F. Cas. 932 (C.C.D. Mich. 1855) (No. ______ ______ 14,491) (under predecessor statute, state proof of claim statutes were not binding on United States). If ordinary pre-emption principles apply, then the federal statute governs. Gibbons v. Ogden, 22 U.S. 1 (1824); U.S. Const. _______ _____ Art. VI, cl.2. The pre-emption inquiry here is more complicated, however, because the Insurance Commissioner argues that the -13- 13 Commonwealth's law regulates insurance companies and (as we shall assume for argument's sake) that IPD is an insurance company. A special federal statute says: No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . . McCarran-Ferguson Act 2(b), 15 U.S.C. 1012(b). This statute, if it were to apply, would compel the opposite result: the Commonwealth's priority system, not the federal system, would govern. The basic legal question before us, then, is whether or not the statute applies. Is the Commonwealth's procedurally-linked priority rule a "law enacted . . . for the purpose of regulating the business of insurance"? The district court, relying on the Sixth Circuit's holding in Fabe, decided that the answer to this ____ question was "yes." Fabe v. Department of Treasury, 939 ____ _______________________ F.2d 341 (6th Cir. 1991). The Supreme Court, however, granted certiorari in Fabe. And, that Court has reached a ____ decision that leads us to reverse the district court. Department of Treasury v. Fabe, supra. ______________________ ____ _____ The Supreme Court, in Fabe, considered separately ____ individual provisions in a state insurance-company- liquidation statute, which provisions provided sequential -14- 14 priority for (1) administrative costs; (2) specified wage claims; (3) policyholders' claims; (4) general creditors' claims; and (5) government claims. The Court held that some ____ of these priority provisions (all comprising parts of the larger statute) amounted to laws "enacted for the purpose of regulating the business of insurance," but others did not. It said that "to the extent" a priority provision "regulates policyholders," it "is a law enacted for the purpose of regulating the business of insurance." Fabe, 113 S. Ct. at ____ 2212. But to "the extent that it is designed to further the interests of other creditors, . . . it is not a law enacted for the purpose of regulating the business of insurance." Id. __ The Court then found that the state statute's first priority for "the expense of administering the insolvency proceeding" was an insurance-regulating provision. It said that the provision "is reasonably necessary to further the goal of protecting policyholders" because, without such a provision, "liquidation could not even commence." Id. In contrast, the Court found that the __ "preferences conferred upon employees [for wage claims] and other general creditors" were not insurance-regulating provisions. Id. The Court said that such preferences "do __ -15- 15 not escape pre-emption because their connection to the ultimate aim of insurance is too tenuous." Id. __ The Court's reasoning and examples lead us to conclude that the federal statute pre-empts the Commonwealth's filing-deadline-related priority provision. The filing deadline (with its penalty of subordination for late claims) cannot be said to directly "regulate[] policyholders," for it is neither directed at, nor necessary for, the protection of policyholders, as the Court required. The provision helps policyholders only to the extent that (and in the same way as) it helps all creditors. That is to say, by penalizing late-filers, the Commonwealth provision may bring about more speedy, orderly liquidation proceedings, thereby (perhaps) reducing the risks (and costs) of extending credit to the company. Nor can one say that the Commonwealth's filing deadline provision is necessary for the protection of policyholders. The Court in Fabe found that a priority for ____ "administrative expense[s]" was necessary to protect policyholders, but, because without such a priority, liquidation might never occur. The Commonwealth's filing deadline at issue here, however, is not necessary for a liquidation. Without it, liquidation would still prove -16- 16 manageable. At worst, the trustee's job would become slightly more difficult. He would have to provide, for example, the United States with a first priority as long as he had, say, actual notice (or "constructive" notice through recording) of the claim, even if he did not have formal notice through a "proof of claim" filed directly in the liquidation proceeding. See cases cited at p. 12, supra. ___ _____ Relieving the trustee of the burden of searching for recorded liens provides policyholders with only indirect, speculative benefit of the kind that the Fabe Court found ____ far too tenuous to prevent pre-emption. We conclude that the special federal pre-emption statute does not apply. Normal pre-emption rules do apply. And, federal law must govern. The Insurance Commissioner makes one further argument. He says that, even if the district court was wrong about federal pre-emption, the court was still right to remand the case. He says the remand rested upon the district court's authority to "abstain" from exercising its jurisdiction in order to allow the Commonwealth court to conduct further insurance company liquidation proceedings. See Burford v. Sun Oil Co., 319 U.S. 315 (1943); Gonzalez v. ___ _______ ___________ ________ Media Elements, Inc., 946 F.2d 157 (1st Cir. 1991) ______________________ -17- 17 (abstaining to permit resolution, in Commonwealth liquidation proceeding, of a tort claim against insolvent insurance company). The problem with this argument lies in the record before us. Burford holds that federal courts should abstain _______ where further federal proceedings would likely decide a "difficult" state law question or would disrupt state efforts to establish coherent and important state policy. Burford, 319 U.S. at 331 & n.28; Bath Memorial Hosp. v. _______ ____________________ Maine Health Care Fin. Comm'n, 853 F.2d 1007, 1013-14 (1st ______________________________ Cir. 1988); see also Fragoso v. Lopez, 991 F.2d 878, 882-85 ________ _______ _____ (1st Cir. 1993). Nothing in the record before us explains how, or why, further federal proceedings would create any such problems. Thus, it offers no justification for court abstention based on Burford. _______ For these reasons, the appeal is dismissed, and the petition for mandamus, setting aside the district court's remand order, is Granted. ________ -18- 18